**MID–HUDSON CATSKILL RURAL MI-GRANT MINISTRY, INC., Plaintiff–Appellant–Cross–Appellee,**

v.

**FINE HOST CORPORATION, Defendant–Appellee–Cross–Appellant.**

Docket No. 04–0056–CV(L), 04–0181–CV(XAP), 04–0472–CV(CON), 04–0767–CV(XAP).

United States Court of Appeals, Second Circuit.

Argued: Feb. 9, 2005.

Decided: Aug. 8, 2005.

Dan Getman, New Paltz, N.Y. (Carol A. Lafond, LeBoeuf, Lamb, Greene & MacRae, LLP, New York, NY, on the brief), for plaintiff-appellant-cross-appellee.

Patrick L. Seely, Jr., Hacker & Murphy, LLP, Latham, NY, for defendant-appellee-cross-appellant.

Before: McLAUGHLIN and SOTOMAYOR, Circuit Judges, and CEDARBAUM, District Judge.*

* The Honorable Miriam Goldman Cedarbaum, United States District Judge for the Southern District of New York, sitting by designation.

SOTOMAYOR, Circuit Judge.

Plaintiff-appellant/cross-appellee Mid–Hudson Catskill Rural Migrant Ministry, Inc. ("plaintiff" or "the Ministry") appeals from a judgment of the United States District Court for the Southern District of New York dismissing its quantum meruit claim under New York law against defendant-appellee/cross-appellant Fine Host Corp. ("defendant" or "Fine Host"). Because plaintiff has recovered damages from defendant under a valid contract governing the same subject matter as the quantum meruit claim, we affirm the district court's dismissal of that claim.

Plaintiff also appeals from a judgment setting awarded attorney's fees at $1,000, arguing that the district court rested its fee calculation on a mistaken analysis of the case law, a misreading of plaintiff's retainer agreement, and a misapplication of Federal Rule of Civil Procedure 68. Plaintiff also claims—and defendant does not dispute—that the district court erred in failing to award plaintiff prejudgment interest on its damages award. On cross-appeal, defendant claims that the underlying contract does not authorize the award of attorney's fees in a breach-of-contract action between the parties. We affirm the district court's judgment awarding plaintiff fees in the amount of $1,000, but we remand the case for consideration of plaintiff's application for prejudgment interest.

## BACKGROUND

Plaintiff is a nondenominational multifaith ministry providing religious services and other assistance to migrant farm workers in eastern New York State. Defendant is a national food service provider headquartered in Connecticut that provides food and related services for, *inter alia,* outdoor public events such as the event at the heart of this appeal.

On April 26, 1994, defendant entered into a food, beverage, and merchandise concession agreement with the promoter of Woodstock 1994, a multi-day outdoor concert in Saugerties, New York. To staff its concession stands, defendant solicited local nonprofit organizations to provide volunteer labor in return for a share of the profits. Plaintiff accepted defendant's offer, and the two parties signed a contract in August 1994. Under the contract, plaintiff was to receive between seven and eight percent of the gross sales of the food booths its volunteers managed. On appeal, the parties dispute how many volunteers plaintiff was to provide under the contract. Plaintiff alleges that it was a maximum of twenty volunteers per booth *per day,* while defendant claims that it was a maximum of twenty volunteers per booth *per shift* (with several shifts each day). Regardless of what the contract provided, the parties agree that plaintiff supplied over 250 volunteers.

Woodstock 1994 did not go as planned. According to plaintiff, the individuals managing the festival were incapable of dealing with the severe weather and unruly crowds. Hundreds of people entered the concert without paying and widespread looting of concession stands occurred. Plaintiff alleges that defendant failed to provide adequate food, kitchen staff, and restroom facilities, failed to sell the "festival scrips" that concert attendees needed to buy concession stand food, failed to keep the booths open and accessible, and failed to provide adequate protection from looters. Plaintiff also alleges that it did not receive payment under the contract.

In July 1998, plaintiff filed a complaint in the United States District Court for the Southern District of New York, asserting state-law causes of action based on quantum meruit, unjust enrichment, and breach of contract. Jurisdiction was based on

diversity of citizenship. The complaint sought a judgment "for the full value of the services [plaintiff] provided to defendant or alternatively for damages incurred by defendant's breach of contract in the approximate amount of $200,000 plus interest." The complaint further sought punitive damages, costs, and attorney's fees.

By order dated January 19, 2001, then District Court Judge Barrington D. Parker, Jr. granted defendant's motion for summary judgment on plaintiff's quantum meruit and unjust enrichment claims to the extent that plaintiff sought damages based on the number of hours worked by the volunteers. The court held that such "wage based" damages could be claimed—if at all—only by the volunteers themselves. The court left open for trial, however, whether plaintiff could recover quantum meruit damages based on another theory. The court denied plaintiff's cross-motion for summary judgment on the quantum meruit claim.

Visiting District Court Judge Samuel Conti of the Northern District of California took over the case in July 2003. Prior to trial, he ruled, based on Judge Parker's earlier order precluding a wage-based measure of damages, that plaintiff could not introduce evidence related to the hourly-rate value of the work of its volunteers. Judge Conti explained: "Any costs that [plaintiff] expended in getting the extra ... people would be quantum meruit costs, but any amount of money attributable to them, to their worth is their own private cause of action, as I read Judge Parker's order." After all evidence had been presented at trial, Judge Conti determined that any remaining quantum meruit claims were subsumed by the contract claim. The court dismissed the quantum meruit claim while allowing the contract claim to proceed.

The jury found defendant liable for breach of contract, but awarded damages of only $3,000. Pursuant to an indemnity clause in the parties' contract, plaintiff sought $155,179.13 in attorney's fees and $5,397.36 in costs. The district court agreed that the contract entitled plaintiff to recover reasonable attorney's fees, but the court set the awarded amount at $1,000, well below plaintiff's request. The court based its reduction of the award on defendant's earlier offer of judgment under Federal Rule of Civil Procedure 68, the small size of the damages award, and the contingent-fee arrangement between plaintiff and its attorney. Both parties appealed.

## DISCUSSION

### I. Quantum Meruit and Unjust Enrichment

Plaintiff claims that "[t]he District Court erred when it determined that [plaintiff] did not have standing to pursue quantum meruit and unjust enrichment claims." This is not, however, what the district court held. Rather, Judges Parker and Conti held that because plaintiff lacked standing to bring suit on behalf of its volunteers, plaintiff could not measure damages in the quantum meruit action by reference to a wage-based valuation of the volunteers' work. The court left open the possibility that Mid–Hudson could recover quantum meruit damages on a theory that was not wage-based. When the district court ultimately dismissed the quantum meruit claim, it did so not for lack of standing but rather because the evidence adduced at trial had demonstrated that the quantum meruit claim was indistinguishable from the contract claim.

Plaintiff's brief does not make clear whether it seeks to sue in quantum meruit on its own behalf, on behalf of its volunteers, or both. Plaintiff's opening brief,

for example, claims that the district court's holding on standing was erroneous because plaintiff had brought the quantum meruit claims "on its own behalf and not on behalf of its volunteers." Later in that same argument section, however, plaintiff explains that it has "standing to sue as a representative of the volunteers." In one particularly confusing sentence, plaintiff argues that it "has standing to bring such claims *on its own behalf* based on *Matter of Dental Society of the State of New York v. Carey*, 61 N.Y.2d 330, 474 N.Y.S.2d 262, 462 N.E.2d 362 (1984), in which a professional society was found to have standing to [sue] *on behalf of its members* " (emphasis added).

Despite these points of confusion, we will construe the briefs liberally as raising an objection to the district court's quantum meruit ruling in its entirety. *Cf. Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653 n. 4 (2d Cir.2004) (reaching a claim where "certain language" in the brief could be "liberally construed" as raising it). We will also assume that plaintiff intends to raise the quantum meruit claims both on its own behalf *and* on behalf of its volunteers. *See id.* Reviewing the issues *de novo*, we affirm the judgment of the district court. *See Shain v. Ellison*, 356 F.3d 211, 214 (2d Cir.2004) ("The existence of standing is a question of law that we review *de novo*."); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 84–85 (2d Cir.2003) (noting that this Court reviews grants of summary judgment *de novo* ).

### A. Plaintiff has standing to sue on its own behalf but not on behalf of its volunteers.

■ Where, as here, jurisdiction is predicated on diversity of citizenship, a plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action. *See Bano v. Union Carbide Corp.*, 361 F.3d 696, 713–14 (2d Cir.2004) (applying federal law of standing in a diversity action and holding that plaintiff organizations lacked standing to bring damages claims belonging to their members); *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 156–57 (2d Cir.2003) (applying state law of standing in a diversity action to determine if plaintiffs had standing to bring claims of breach of fiduciary duty and breach of contract); *see also Metro. Express Servs., Inc. v. City of Kansas City*, 23 F.3d 1367, 1369–70 (8th Cir.1994) (holding that a plaintiff in a diversity action must establish standing under applicable state law as well as under Article III). Applying New York and federal law, we hold that plaintiff has standing to bring suit on its own behalf for injuries it sustained as an organization but that it lacks standing to sue on behalf of its volunteers.

■ We address first plaintiff's standing to sue as a representative of the volunteers. To the extent that the volunteers in the instant dispute were members of the Ministry—and plaintiff claims that at least some of them were—the standing inquiry turns on whether plaintiff has "associational" or "organizational" standing to sue on behalf of its members. Under New York and federal law, an organization may sue as a representative of its members only if the members " 'have standing to sue in their own right.' " *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996) (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)); *see MFY Legal Servs., Inc. v. Dudley*, 67 N.Y.2d 706, 708, 499 N.Y.S.2d 930, 490 N.E.2d 849

(1986).[1] Injury-in-fact is an indispensable requirement for standing. *See Jenkins v. United States*, 386 F.3d 415, 417 (2d Cir. 2004); *New York Propane Gas Ass'n v. New York State Dep't of State*, 17 A.D.3d 915, 793 N.Y.S.2d 601, 602 (3d Dep't 2005) (same). Plaintiff argues that its volunteers were "injured because they had donated valuable labor to the Ministry, and the Ministry had not been fully compensated for it." We need not reach the question of whether the member volunteers' (allegedly unfulfilled) interest in seeing that plaintiff received the compensation for which they had worked gave rise to an injury-in-fact, because even if we were to hold that they suffered a legally cognizable injury, the extent of the injury would vary among the member volunteers, who did not all invest the same amount of labor. The need for an individualized inquiry would defeat the association's standing, because a plaintiff normally lacks associational standing to sue on behalf of its members where "the fact and extent of injury would require individualized proof." *Bano*, 361 F.3d at 714 (citation and internal quotation marks omitted); *see also id.* ("We know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members.").

■ To the extent that plaintiff seeks to sue on behalf of volunteers who are *not* members, it may pursue its claim only on a theory of third-party standing. In addition to meeting "the constitutional prerequisites of standing," namely "(1) injury-in-fact, (2) causation, and (3) redressability," a plaintiff seeking third-party standing in federal court must also satisfy the pruden-

tial prerequisites of standing by demonstrating a close relation to the injured third party and a hindrance to that party's ability to protect its own interests. *Lewis v. Thompson*, 252 F.3d 567, 584 (2d Cir. 2001) (citations omitted). Plaintiff lacks third-party standing because it has not demonstrated a hindrance to the volunteers' ability to protect their own interests.

[6, 7] Whether plaintiff has standing to sue *on its own behalf* presents an entirely different question. *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir.1998); *Dudley*, 67 N.Y.2d at 708, 499 N.Y.S.2d 930, 490 N.E.2d 849. There is no doubt that an organization may sue on its own behalf for injuries it has sustained. *See Irish Lesbian & Gay Org.*, 143 F.3d at 649; *Mixon v. Grinker*, 157 A.D.2d 423, 556 N.Y.S.2d 855, 857 (1st Dep't 1990). In accordance with basic principles of standing under state and federal law, however, the plaintiff must allege "an injury-in-fact that is fairly traceable to the challenged action of the defendant, and which is likely to be redressed by the requested relief." *Jenkins v. United States*, 386 F.3d at 417 (emphasis omitted); *see Soc'y of the Plastics Indus., Inc. v. County of Suffolk*, 77 N.Y.2d 761, 772–73, 570 N.Y.S.2d 778, 573 N.E.2d 1034 (1991). Here, plaintiff alleges that it expended resources *as an organization* to locate, recruit, manage, train, and supply volunteers to defendant beyond what was required by their contract, and that defendant's failure to compensate plaintiff for those extra services constitutes unjust enrichment. We agree with the district court that this claim

---

**1.** The district court discussed an additional requirement for representative standing under *Dudley*, namely, that a corporation may not "sue on its own behalf for a declaration of the rights of its members." *Dudley*, however, held that an organization could not "sue on

its own behalf for a *declaration of its potential clients' rights.*" 67 N.Y.2d at 708, 499 N.Y.S.2d 930, 490 N.E.2d 849 (emphasis added). This aspect of *Dudley* does not apply here, for plaintiffs are not seeking declaratory relief and its volunteers were not "potential."

satisfies standing requirements under New York and federal law.

### B. The existence of a valid contract nevertheless bars plaintiff's claim for quantum meruit relief.

■■■■ Applying New York law, we may analyze quantum meruit and unjust enrichment together as a single quasi contract claim. *See Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 663 (2d Cir.1996) (citing *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 768 F.Supp. 89, 96 (S.D.N.Y.1991) (explaining that "quantum meruit and unjust enrichment are not separate causes of action," and that "unjust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit, meaning 'as much as he deserves,' is one measure of liability for the breach of such a contract"), *rev'd on other grounds*, 959 F.2d 425 (2d Cir.1992)). In order to recover in quantum meruit under New York law, a claimant must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000) (citation and internal quotation marks omitted). New York law does not permit recovery in quantum meruit, however, if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim. *Clark–Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987); *Ellis v. Abbey & Ellis*, 294 A.D.2d 168, 742 N.Y.S.2d 225, 228 (1st Dep't 2002); *Mariacher Contracting Co., Inc. v. Kirst Constr., Inc.*, 187 A.D.2d 986, 590 N.Y.S.2d 613, 615 (4th Dep't 1992). This restriction on quantum meruit claims bars recovery by plaintiff here. Having successfully brought a breach-of-contract claim based on defendant's failure to compensate it for the services it provided, plaintiff may not recover a second time through quantum meruit. *See Clark–Fitzpatrick, Inc.*, 70 N.Y.2d at 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 ("It is impermissible ... to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties.").

■■■■ Plaintiff claims that this restriction on quantum meruit actions does not apply to the instant case because the contract at issue required plaintiff to provide only twenty volunteers per day. Compensation for providing additional volunteers, plaintiff contends, remains recoverable in a quantum meruit action. Plaintiff is certainly correct that a valid contract bars a quantum meruit action only where "the scope of [the contract] clearly covers the dispute between the parties." *Id.; see also Curtis Props. Corp. v. Greif Cos.*, 236 A.D.2d 237, 653 N.Y.S.2d 569, 571 (1st Dep't 1997) ("[A] party is not precluded from proceeding on both breach of contract and quasi-contract theories where ... the contract does not cover the dispute in issue."); *see also U.S. East Telecomms., Inc. v. U.S. West Communications Servs., Inc.*, 38 F.3d 1289, 1298 (2d Cir.1994) ("[R]ecovery in quasi-contract outside the existing contract may be had if a party has rendered additional services upon extra-contractual representations by the other party."). On the other hand, a plaintiff's entitlement to recover in quantum meruit outside of a valid contract may depend on a showing that the " 'additional services' are 'so distinct from the [contractual] duties ... that it would be unreasonable for the [defendant] to assume that they were rendered without expectation of fur-

ther pay.'" *Id.* (quoting *O'Keeffe v. Bry,* 456 F.Supp. 822, 831 (S.D.N.Y.1978) (further citation omitted)). We doubt that plaintiff could make such a showing here.

The real flaw in plaintiff's argument, however, is simply that its breach-of-contract claim, as plaintiff presented it to the jury, sought damages based on the provision of all 259 of the volunteers. The contract suit thus encompassed the work of providing all of the so-called "extra" volunteers for which plaintiff seeks compensation in quantum meruit.[2]

In his arguments to the jury, for example, plaintiff's attorney repeatedly emphasized that pursuant to defendant's request, plaintiff had recruited a large number of volunteers—259 in total—to work at the festival. Despite plaintiff's compliance with defendant's request, the attorney explained, defendant failed to live up to its promise *under the contract* to provide adequate food for those volunteers to sell. Plaintiff's consistent emphasis on the full complement of volunteers defeats its claim on appeal that the majority of the volunteers were "extra" volunteers not encompassed in the breach-of-contract action before the district court. It is worth noting that the Executive Director of the Ministry, who signed the contract with defendant on behalf of plaintiff, testified at trial that "according to [the contract]," plaintiff was to provide twenty people *per booth per shift,* not merely twenty people per day. Moreover, although defendant arguably had an interest in reducing the scope of the contract claim (in order to reduce its liability), the defense attorney, like plaintiff's attorney, represented to the trial judge and jury that the contract provided for the full number of volunteers who worked at the festival. The defendant's

strategy was simply to claim that it was not responsible for the festival's troubles.

The district court's rulings further reflect the understanding of the parties at trial that the breach-of-contract claim encompassed the work of providing all 259 volunteers. Before closing, for example, the district court dismissed the quantum meruit action, finding that "the cause of action for quantum meruit is exactly the same cause of action as breach of contract." Given that the quantum meruit claim was based on plaintiff's provision of the so-called "extra" volunteers, the court's finding that the quantum meruit claim was identical to the contract claim indicates unambiguously that the court, like the parties, viewed the contract claim as covering all of the volunteers. Indeed, at the time the district court dismissed the quantum meruit claim, plaintiff gave no indication to the district court judge that its breach-of-contract claim was limited to twenty volunteers per day, or that it was willing to so limit its claim if the district court allowed the quantum meruit claim to survive.

Finally, the district court judge, as part of his instruction on the breach-of-contract claim, explained to the jury that if "the parties mutually agreed to perform specific duties outside the contract and [if] both parties were fully aware of the contents of such specific agreements, then the parties would be bound by those additional agreements." In light of the fact that both parties argued to the jury that plaintiff and defendant had mutually agreed to the provision of over 250 volunteers, the district court's instruction to the jury that such a mutual agreement would fall within the contract claim eliminates any doubt that the claim considered by the jury en-

---

2. Moreover, plaintiff did not present evidence at trial of any damages—beyond the breach-of-contract damages—that it incurred *as an* *organization* in providing the so-called "extra" volunteers.

compassed plaintiff's provision of all 259 volunteers.[3]

In sum, we cannot credit plaintiff's claim before this Court that the work of providing the "extra" volunteers was beyond the scope of its breach-of-contract action. Having recovered damages in that action, plaintiff is barred from seeking duplicative relief in quantum meruit. *See Clark–Fitzpatrick, Inc.* 70 N.Y.2d at 389, 521 N.Y.S.2d 653, 516 N.E.2d 190; *see also Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253, 263–64 (2d Cir.1999) (holding that once jury had found that plaintiff had an enforceable contract, plaintiff could not seek recovery in quantum meruit under New York law).

## II. Attorney's Fees

■ We apply New York substantive law to resolve the dispute regarding plaintiff's entitlement to attorney's fees. *See Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 873 (2d Cir.1994) (holding in a diversity action that " '[s]tate law creates the substantive right to attorney's fees' " (quoting *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir.1992))). We review an award of attorney's fees for abuse of discretion if the district court has awarded the fees "under a valid contractual authorization." *U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir.2004). We review *de novo*, however, the district court's interpretation of the contract. *Id.*

## A. The contract's indemnity clause provides for attorney's fees in actions between the parties.

■ Because promises in a contract to indemnify the other party's attorney's fees "run against the grain of the accepted policy that parties are responsible for their own attorneys' fees," *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir.2003), courts applying New York law " 'should not infer a party's intention' to provide counsel fees as damages for a breach of contract 'unless the intention to do so is unmistakably clear' from the language of the contract." *Id.* (quoting *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989)). Applying this rule in *Hooper Associates*, the New York Court of Appeals refused to read an attorney's fees provision as including claims between the parties themselves, as opposed to third-party claims, where the provision did not "exclusively or unequivocally" refer to such claims or otherwise "support an inference that defendant promised to indemnify plaintiff for counsel fees in an action on the contract." 74 N.Y.2d at 492, 549 N.Y.S.2d 365, 548 N.E.2d 903. Reading the contract as a whole, the court also observed that its narrow interpretation of the indemnity clause was "supported by other provisions in the contract which unmistakably relate[d] to third-party claims." *Id.* To read the indemnity clause as covering suits between the parties, the court found, would render other provisions "meaning-

---

**3.** Furthermore, we disagree with plaintiff's suggestion that the written contract "undeniabl[y]" calls for only twenty volunteers per day. The relevant provision is open-ended: "Fine Host will determine the adequate staff size both collectively and for each individual stand assigned to the [Ministry] at all days. The [Ministry] will supply a maximum number of 20 members for each scheduled day *unless specified otherwise* " (emphasis added).

Evidence in the record suggests that from the start of its dealings with defendant, plaintiff understood that the agreement would encompass all of the volunteers that plaintiff could provide. In any event, any ambiguity was resolved at trial, where both parties represented to the jury that the contract covered all of the volunteers who worked at the festival.

less."[4] *Id.* Applying a similar rationale in *Oscar Gruss & Son,* this Court refused to read an indemnity clause as providing for attorney's fees in breach-of-contract suits between the parties where the subsection of the contract providing for indemnification also contained language that "indisputably applie[d] solely to third-party claims."[5] 337 F.3d at 200; *see also Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 20–21 (2d Cir.1996) (applying New York law and holding that a contractual indemnity provision did not apply to a suit between the parties where its language could "easily be read as limited to third party actions").

■ As originally written, the contract now before us included only one of the two indemnification provisions that appear in the contract's final form. This first provision requires indemnification of *defendant* by *plaintiff* in certain actions brought by third parties:

> [The Ministry] will indemnify and hold harmless [Fine Host, Woodstock Ventures, Inc., Polygram Diversified Ventures, the Town of Saugerties and other entities] from any and all liabilities (i.e. bodily injury), damage (i.e. property), expenses (including reasonable attorney fees, court costs, and other costs) or actions of any kind or nature, arising, growing out of, or otherwise connected with any activity under this Agreement

arising by the negligence of [Ministry] personnel.

(Emphasis added).

Before signing the contract, the parties added an addendum to the agreement that includes a second indemnification provision requiring indemnification of *plaintiff* by *defendant.* That is the provision at issue here. Significantly, the parties did not simply copy the structure and wording of the first provision in drafting the second; instead, they wrote an indemnity clause that sweeps more broadly, providing for reimbursement of attorney's fees regardless of the nature of the underlying action:

> [The Ministry] shall be indemnified and held harmless from any actions resulting from the negligence of [defendant]; from any and all liabilities (i.e. bodily injury), damage (i.e. property), expenses (including reasonable attorney fees, court costs, and other costs) or actions of any kind or nature arising, growing out of, or otherwise connected with any activity under this Agreement.

We agree with plaintiff that the broad language of the second provision, when read in conjunction with the first provision, indicates "unmistakably," *Hooper Assocs.,* 74 N.Y.2d at 492, 549 N.Y.S.2d 365, 548 N.E.2d 903, that the parties intended for the second provision to apply to "actions of any kind or nature," including actions be-

---

**4.** The court focused specifically on a provision of the contract requiring plaintiff " 'promptly [to] notify' defendant of 'any claim or litigation to which the indemnity [clause] shall apply,' " as well as a provision allowing defendant to " 'assume the defense of any such claim or litigation with counsel satisfactory to [plaintiff].' " *Id.* (second alteration in original). To read the indemnity clause as including attorney's fees in a breach-of-contract action between the parties, the court found, "would render [those] provisions meaningless because the requirement of notice and assumption of the defense has no

logical application to a suit between the parties." *Id.* at 492–93.

**5.** As in *Hooper Associates,* the clause at issue in *Oscar Gruss & Son* provided, *inter alia,* that defendant had "the right to notice of any indemnification claim and an opportunity to assume [the other party's] defense." 337 F.3d at 200; *see Hooper Assocs.,* 74 N.Y.2d at 492–93, 549 N.Y.S.2d 365, 548 N.E.2d 903. Such provisions have "no logical application to a suit between the parties." *Hooper Assocs.,* 74 N.Y.2d at 493, 549 N.Y.S.2d 365, 548 N.E.2d 903.

tween the parties. *See also Sagittarius Broad. Corp. v. Evergreen Media Corp.*, 243 A.D.2d 325, 663 N.Y.S.2d 160, 161 (1st Dep't 1997) (holding, where language limiting indemnification to third-party actions appeared in only one of two key sentences in an indemnity clause, that the more expansive sentence encompassed attorney's fees in suits on the contract between the parties). Accordingly, we reject defendant's cross appeal and affirm the district court's decision to award fees.

## B. Plaintiff is entitled to no more than $1,000 in fees.

■ The district court found that "[p]laintiff and its counsel agreed to a one-third contingency fee arrangement," and held that this amount—$1,000—represented a reasonable estimate of the awardable attorney's fees. We agree with plaintiff that the court misstated the relevant provision of the retainer agreement, which provides that plaintiff and its counsel agree to "the rate of either 1/3 of any gross settlement or judgment, or the amount of fees received from defendants, (e.g. pursuant to the contract with Fine Host Corporation), *whichever is greater*" (emphasis added). Despite this error, we affirm the district court's decision to cap awardable fees at $1,000. Construing the parties' indemnity clause strictly, as we must under New York law, *see Hooper*

*Assocs.*, 74 N.Y.2d at 491, 549 N.Y.S.2d 365, 548 N.E.2d 903, we agree with defendant that the clause does not permit plaintiff to demand from defendant greater expenses than plaintiff has itself incurred.[6] *See id.* ("When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.").

■ The contract provision requiring defendant to pay attorney's fees is by its plain terms an indemnity provision. It provides that plaintiff "shall be *indemnified* and *held harmless* from ... reasonable attorney fees" (emphasis added). Indemnity provisions by definition only require reimbursement for losses and liabilities that the indemnitee has actually incurred. *See Atlantic Richfield Co. v. Interstate Oil Transp. Co.*, 784 F.2d 106, 112 (2d Cir.1986) ("[A] claim for indemnity ... requires that an actual liability be sustained by the indemnitee....") (first ellipsis in original) (citation and internal quotation marks omitted); Black's Law Dictionary 783–84 (8th ed.2004) (defining "indemnify" as "[t]o reimburse (another) for a loss suffered because of a third party's or one's own act or default"); *id.* at 749 (defining "hold-harmless agreement" as "[a] contract in which one party agrees to indemnify the other"). Plaintiff may

---

6. Though we agree with defendant's conclusion, we do not adopt its rationale. Defendant argues that the retainer agreement's "whichever is greater" language is unenforceable under the principles of *Equitable Lumber Corp. v. IPA Land Dev. Corp.*, 38 N.Y.2d 516, 381 N.Y.S.2d 459, 344 N.E.2d 391 (1976). In *Equitable Lumber,* the New York Court of Appeals held that a "[p]laintiff may not manipulate the actual amount of damages by entering into any exorbitant fee arrangement with its attorney." *Id.* at 521. *Equitable Lumber,* however, involved a specific statutory scheme not at issue here. *See id.* at 519–24,

381 N.Y.S.2d 459, 344 N.E.2d 391. More fundamentally, even if the awardable fees in the instant case exceeded $1,000, there would be no risk of an "exorbitant fee," *id.* at 521, 381 N.Y.S.2d 459, 344 N.E.2d 391, because the contract's indemnity clause provides only for the award of "reasonable" fees. We have no doubt that district courts calculating awardable fees under New York law can distinguish "reasonable" from "exorbitant." Nevertheless, for the reasons explained *infra*, we agree with defendant that the parties' indemnity agreement limits plaintiff's recovery of attorney's fees to plaintiff's actual losses and liabilities.

not be indemnified for an amount it does not yet owe. *See Bay Ridge Air Rights, Inc. v. State of New York,* 44 N.Y.2d 49, 54, 404 N.Y.S.2d 73, 375 N.E.2d 29 (1978) (noting that a cause of action for indemnity generally does not accrue until the indemnitee makes a payment requiring indemnification). Though the record makes clear that plaintiff owes its attorney $1,000, there is no evidence of a liability exceeding that amount.[7]

■ Plaintiff suggests that it may owe more than $1,000 because its retainer agreement requires payment to counsel of attorney's fees "received from defendants" if those fees are greater than the one-third contingency fee. By making plaintiff's obligation to its attorney depend on what plaintiff "receive[s] from defendants," however, the retainer agreement places the cart before the horse and ignores the language of the parties' underlying indemnity agreement, which requires defendant to reimburse plaintiff only *after* plaintiff has demonstrated a loss or liability. In other words, plaintiff must demonstrate to the court that it owes a given amount to its counsel *before* seeking indemnification in that amount from defendant. The retainer

agreement is unenforceable to the extent that it attempts to calculate plaintiff's liabilities to counsel based on what plaintiff can secure as reimbursement for those liabilities in an indemnity action.[8]

In arguing that the fee award owed to plaintiff by defendant may exceed the amount owed by plaintiff to its attorney, plaintiff relies only on *Venegas v. Mitchell,* 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990). *Venegas,* however, involved the award of attorney's fees pursuant to a federal civil rights law, *see* 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of [certain federal civil rights statutes], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."), and therefore has little, if any, relevance to a dispute concerning a contractual indemnity provision governed by state law.

Defendant argues that if we uphold the judgment entitling plaintiff to a fees award, which we have done, we should affirm the judgment setting that award at $1,000. Thus, neither party seeks a recalculation to reduce the award below $1,000.

---

7. New York law "permit[s] an indemnitee to obtain a conditional judgment fixing the potential liability without the need for payment until it is shown that the judgment in the principal action has been satisfied in whole or part." *McCabe v. Queensboro Farm Prods., Inc.,* 22 N.Y.2d 204, 208, 292 N.Y.S.2d 400, 239 N.E.2d 340 (1968). Even where this "procedural device" is permitted, however, it "does not vitiate the requirement of a showing of actual loss before there may be recovery." *Id.*

8. Nothing in this analysis would preclude a plaintiff from recovering fees calculated using a lodestar or similar method if the retainer agreement were drafted appropriately. For example, a retainer agreement could provide that in the event plaintiff prevails on any claim, plaintiff will pay counsel at a rate of

either one-third of any judgment, or at a rate of X number of dollars per hour worked, whichever is greater. Under such an agreement, a prevailing plaintiff could seek indemnification for the greater of these amounts—subject to a court's adjustment for reasonableness—because plaintiff would already be liable to counsel for the higher rate; that is, its liability to its attorney would have accrued before it sought indemnification. Here, in contrast, the retainer agreement provides that plaintiff does not owe its counsel more than one third of the recovery until the amount is "received" from the defendant. This provision is unenforceable, because pursuant to the indemnity agreement, plaintiff will not receive any money from defendant until plaintiff first demonstrates a liability to counsel.

Accordingly, we may affirm the district court's ruling on attorney's fees without addressing the remaining arguments raised by the parties.[9]

Finally, we address plaintiff's argument that the district court erred in failing to consider the application for prejudgment interest. We agree—and defendant concedes—that the district court erred. On remand, the district court should consider the application in accordance with New York state law. *See* N.Y. C.P.L.R. § 5001; *see also Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 186 (2d Cir.2001).

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court judgment dismissing the quantum meruit claim. We also AFFIRM the court's judgment that plaintiff is entitled to recover $1,000 in attorney's fees under the indemnity provision of the parties' contract. We REMAND the case to the district court for consideration of plaintiff's motion for prejudgment interest.

---

**9.** The parties raise a number of significant issues, including questions regarding the proper application of Federal Rule of Civil Procedure 68 in contract disputes; the permissibility of reducing attorney's fees incurred *before* an offer of judgment based on a party's rejection of the Rule 68 offer; and the extent to which a court may base its fees award on the small size of a damages award under New York law. None of these issues is essential to the resolution of the questions in this case, however, and we do not discuss them further.