10-518-cv; 10-527-cv
Argilus, LLC v. The PNC Financial Services Group, Inc., et al.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 18th day of April, two thousand eleven.

PRESENT: CHESTER J. STRAUB,
              ROBERT D. SACK,
              GERARD E. LYNCH,
                    *Circuit Judges.*

-------------------------------------------------------------------

ARGILUS, LLC,
                    *Plaintiff-Appellant*,

            v.                                    No. 10-518-cv

THE PNC FINANCIAL SERVICES GROUP, INC.,
PNC EQUITY CAPITAL, PNC EQUITY
MANAGEMENT CORP., PNC EQUITY PARTNERS, L.P.,
                    *Defendants-Appellees.*

-------------------------------------------------------------------

WILLIAMSON ACQUISITION, INC.,
DAVID L. WILLIAMSON,
                    *Plaintiffs-Appellants*,

            v.                                    No. 10-527-cv

PNC EQUITY MANAGEMENT CORP.,
                    *Defendant-Appellee.*

-------------------------------------------------------------------

FOR APPELLANTS:        GLENN E. PEZZULO, Culley, Marks, Tanenbaum & Pezzulo, LLP, Rochester, New York.

FOR APPELLEES:         DAVID ROTHENBERG, Elizabeth Reitkopp Young, Geiger & Rothenberg, LLP, Rochester, New York.

Appeal from the United States District Court for the Western District of New York (Michael A. Telesca, *J.*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

These actions arise from a common set of facts. In late 2002, David L. Williamson and Williamson Acquisition, Inc. (collectively "Williamson") joined with Argilus, LLC and the PNC defendants (collectively "PNC") in an ultimately unsuccessful effort to acquire Griffith Oil Company ("Griffith"). Several months after the Williamson acquisition effort failed, PNC succeeded in purchasing Griffith with the help of Philip Saunders, a former owner of Griffith. Williamson and Argilus sued, alleging that, by acquiring Griffith without their involvement, PNC had breached its contractual obligations to both companies and committed several common law business torts. After extensive discovery, the district court granted summary judgment for defendants. Plaintiffs appealed.

We assume the parties' familiarity with the factual details, the procedural history of the case, and the issues on appeal.

2

DISCUSSION

We review an award of summary judgment de novo, affirming "only if there is no genuine issue as to any material fact, and if the moving party is entitled to a judgment as a matter of law." Allianz Ins. Co. v. Lerner, 416 F.3d 109, 113 (2d Cir. 2005).

I.  Breach of Contract Claims

Williamson and Argilus identify two sources of contractual obligation that they claim  PNC breached by joining with Saunders to purchase Griffith.  The first of these is a written agreement signed by PNC and Argilus, acting on behalf of Williamson ("the Confidentiality Agreement").  Under the Confidentiality Agreement, PNC committed to keep confidential certain proprietary information that it received in connection with the Williamson proposal.  Appellants argue that PNC breached the agreement "by using this information" in connection with its ultimate acquisition of Griffith.  But, as the district court correctly observed, despite extensive discovery, appellants have been unable to identify any evidence to support this assertion.  Appellants argue that a fact finder could conclude that PNC breached its confidentiality obligation, because some documents included in the Saunders proposal were similar to documents developed by Williamson and PNC.  But the mere submission of similar proposals is not  evidence that PNC shared Williamson's confidential information with Saunders. The content of both proposals was largely derived from Morgan Stanley's offering memorandum, and linguistic similarities between the proposals are unsurprising given that PNC drafted both proposal letters from a template.  Moreover, even if the Saunders proposal did rely on original information contained in Williamson's earlier offer, appellants have offered no evidence that PNC,

3

rather than Griffith, was the source of that information.  Absent any evidence to support appellants' claim that PNC breached its obligations under the Confidentiality Agreement, the district court did not err in awarding PNC summary judgment on that claim.

Appellants' second claimed source of contract liability is a "Confidential Information Memorandum" that accompanied documents transmitted by Argilus to PNC. Although the Memorandum largely repeated the terms of the Confidentiality Agreement, it also provided: "By accepting this Memorandum, you acknowledge and agree that . . . [t]here will be no direct or indirect contact . . . with Griffith . . . unless specifically approved beforehand by Argilus . . . ."  Appellants contend that PNC violated this provision by asking members of Griffith management about their reservations regarding the Williamson proposal.  PNC does not dispute that such a conversation took place, though it contends that the communication was authorized.

Standing on its own, the Memorandum cannot constitute an enforceable contract. Appellants ask us to construe PNC's failure to reject the memorandum as an agreement to be bound by its terms in exchange for the deal information that accompanied it.  Under New York law, however, absent a signed writing, a party cannot enforce a contract for which it gave no consideration other than a promise to carry out a preexisting duty. Beitner v. Becker, 824 N.Y.S.2d 155 (App. Div. 2006).  In this case, Williamson, and Argilus as its agent, were already obligated under the Confidentiality Agreement to provide PNC with the documents it would need to participate in the bid to acquire Griffith.  Indeed, the Memorandum acknowledged as much, noting that the documents

4

that accompanied it were "provided pursuant to a Confidentiality Agreement ("CA")" between the recipient [PNC], Griffith and WAI." The Memorandum can thus create legal obligations only if it is understood as a modification of the parties' pre-existing agreement. That possibility is clearly foreclosed, however, by the terms of the Confidentiality Agreement, which provides that the agreements contained therein "may be modified or waived only by a separate writing *signed by the Company and* [*PNC*] expressly so modifying or waiving such agreements." Since the unsigned Confidential Information Memorandum can neither modify the Confidentiality Agreement nor constitute a stand-alone contract, appellants' claim that PNC was contractually prohibited from communicating directly with Griffith is untenable.

Finally, appellants may not claim that PNC violated its contractual duty of good faith and fair dealing. As noted above, the only contract – express or implied – by which PNC was bound was the Confidentiality Agreement between it and Williamson. We see no indication that PNC violated "an implied promise so interwoven" with that agreement "as to be necessary for the effectuation of [its] purposes." Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 407 (2d Cir. 2006) (internal quotation marks omitted).

II. Joint Venture Claims

Appellants also seek to establish PNC's liability on the theory that, in working together to acquire Griffith, Williamson, Argilus, and PNC entered into a joint venture, giving rise to mutual fiduciary duties and an obligation on PNC's part to pay Argilus's success fee. Even assuming that the parties agreed to form a joint venture, a claim that PNC contests, appellants' arguments are unsupported by the evidence.

5

Under New York law, participants in a joint venture owe one another the same fiduciary duties that inhere between members of a partnership. <u>Stem v. Warren</u>, 174 N.Y.S. 30 (App. Div. 1919). Thus, a joint venturer must generally obtain permission from his associates before taking personal advantage of a business opportunity that he learns of through his participation in the venture. <u>Meinhard v. Salmon</u>, 164 N.E. 545 (N.Y. 1928). Appellants argue that PNC violated this rule by purchasing Griffith without their involvement. It is clear, however, that any fiduciary duties that PNC owed to the appellants were extinguished long before PNC and Saunders made their offer to purchase Griffith in July 2003. By appellants' own account, their relationship with PNC came to an end in January 2003 when it became clear that the Williamson proposal would not be accepted. Appellants contend that PNC turned Griffith's owners against the deal in some unspecified way, but they do not seriously dispute that the main sticking point was discomfort on the part of Griffith's management with David Williamson's planned role in the merged company, and they point to no evidence that PNC created or encouraged that discomfort. Accordingly, no reasonable fact-finder could conclude that PNC breached its fiduciary obligations to appellants.

Nor would the existence of a joint venture obligate PNC to pay Argilus's $1.2 million success fee. Williamson and Argilus negotiated the success fee well before they approached PNC with the opportunity to purchase Griffith. Their agreement obligated Williamson, not any prospective joint venture, to pay Argilus if Williamson succeeded in acquiring Griffith. There is no evidence that PNC expressly or impliedly assumed joint

6

liability with Williamson on that agreement.

III. Other Claims

Appellants allege a host of other common law contract and tort violations, none of which has any merit.

Argilus and Williamson argue that they may recover from PNC on a theory of unjust enrichment, because the information that PNC received from them facilitated its negotiation of the Saunders purchase of Griffith. As the district court recognized, however, appellants have not shown that they are entitled "in equity and good conscience" to receive some portion of the benefit that accrued to PNC as a result of PNC's ultimate participation in the purchase of Griffith. See Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000).

Argilus alone also argues that it is entitled to recover from PNC on a theory of quantum meruit because it "provided information and services to PNC" in the expectation that, when the purchase of Griffith closed, it would receive compensation for its work in the form of the $1.2 million success fee. As the district court correctly noted, however, a party cannot recover in quantum meruit if there is "a valid, enforceable contract that governs the same subject matter as the quantum meruit claim." Mid-Hudson Catskill Rural Migrant Ministry v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005). Here, the work for which Argilus seeks compensation was governed by its agreement with Williamson, which entitled Argilus to various benefits if Williamson succeeded in acquiring Griffith. Argilus's quantum meruit claim against PNC is therefore foreclosed as a matter of law.

7

Nor has Argilus raised a factual issue on its claims of tortious interference with contract and tortious interference with a prospective business advantage. Both claims require a showing of malicious intent on the part of the defendant. See Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 424 (1996) (discussing the elements of a tortious interference with contract claim); John R. Loftus, Inc. v. White, 540 N.Y.S.2d 610, 612 (App. Div. 1989) ("[T]he motive [for interference with a prospective business advantage to be tortious] must be solely malicious, and the plaintiff has the burden of proving this fact." (internal quotation marks omitted)). Argilus has produced no evidence that PNC intended either to frustrate the relationship between Argilus and Williamson or to deprive Argilus of its success fee.

Finally, because we have already concluded that the record is devoid of evidence that PNC used any confidential information in its eventually successful bid for Griffith, we reject Argilus's contention that the district court inappropriately awarded summary judgment for PNC on its misappropriation of trade secrets claim. Cf. Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990) (requiring that a plaintiff claiming misappropriation of trade secrets prove that "defendant is *using* that trade secret in breach of an agreement" (emphasis added, internal quotation marks omitted)).

8

**CONCLUSION**

We have considered the appellants' remaining arguments and find them to be without merit. For the reasons stated above, we AFFIRM the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court