15-701-cv; 15-1727-cv
*McBurnie v. Rutledge*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of April, two thousand sixteen.

PRESENT:    AMALYA L. KEARSE,
            JOSÉ A. CABRANES,
            DENNY CHIN,
                    *Circuit Judges.*

---

WILLIAM L. MCBURNIE,

        *Plaintiff-Appellant,*                        15-701-cv (tandem)

        v.

DANE KELLER RUTLEDGE, ESQ., MARSH &
MCLENNAN COMPANIES, INC., MARSH INC., and
MARSH USA INC.,

        *Defendants-Appellees.*

---

WILLIAM L. MCBURNIE,

        *Plaintiff-Appellee,*                        15-1727-cv (tandem)

        v.

DANE KELLER RUTLEDGE, ESQ.,

        *Defendant-Appellant,*

v.

MARSH & MCLENNAN COMPANIES, INC., MARSH
INC., and MARSH USA INC.,

*Defendants.*

---

**FOR PLAINTIFF:**

LAWRENCE C. GLYNN, Caruso Glynn, LLC, Fresh Meadows, NY.

**FOR DEFENDANT DANE KELLER RUTLEDGE:**

JOHN W. MOSCOW (Sammi Malek, Samuel M. Light, *on the brief*), Baker & Hostetler LLP, New York, NY.

**FOR DEFENDANTS MARSH & MCLENNAN COMPANIES, INC., MARSH USA INC., AND MARSH INC.:**

JONATHAN D. POLKES (Nicholas J. Pappas, A. Millie Warner, Adam B. Banks, *on the brief*), Weil, Gotshal & Manges LLP, New York, NY.

Appeals from orders of the United States District Court for the Southern District of New York (J. Paul Oetken, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the orders of the District Court be and hereby are **AFFIRMED**.

This order resolves two appeals, which were submitted separately but were argued in tandem and arise from the same underlying District Court case. In that case, William L. McBurnie ("McBurnie") brought an action against his former attorney, Dane Keller Rutledge ("Rutledge"), as well as Marsh & McLennan Companies, Inc., Marsh Inc., and Marsh USA Inc. (jointly, "Marsh"), alleging various state-law claims stemming from Marsh's agreement to indemnify McBurnie against the cost of defending a criminal prosecution. McBurnie appeals from an order of February 19, 2015, which granted motions by defendants to dismiss his amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and denied him leave to further amend his complaint. Rutledge appeals from an order of April 28, 2015, denying his motion for sanctions against McBurnie's counsel, Lawrence C. Glynn ("Glynn"), who continues to represent McBurnie on this appeal. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## BACKGROUND

As this case comes to us after the grant of a motion to dismiss, we must accept the facts as they are alleged in the complaint. *See Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 442 (2d Cir. 2015). According to the amended complaint, McBurnie worked for Marsh, an insurance broker, from 1997 to 2005. In 2004, Marsh became the subject of an investigation by the New York State Attorney General ("AG"), who filed a civil complaint alleging that Marsh had engaged in insurance practices that violated New York law.

In October 2004, McBurnie hired Rutledge to represent him in connection with the AG's investigation. Because McBurnie was an officer of Marsh, the firm's bylaws obliged it to indemnify McBurnie for certain legal costs arising from his employment. Rutledge billed Marsh directly, and his fees soon caused concern. By March 2010, Marsh had paid Rutledge about $3.1 million for representing McBurnie, and Rutledge claimed that Marsh owed him $3.2 million more. As Marsh and Rutledge wrangled over fees, Marsh insisted to McBurnie's counsel that any resolution of their dispute include a waiver by *McBurnie* of certain potential claims against Marsh. McBurnie rejected any such arrangement and, believing that his interests and Rutledge's had diverged, fired Rutledge in March 2011. Rutledge then signed an agreement with Marsh (the "Settlement Agreement"), which resolved Rutledge's claims against Marsh for $2.3 million.

McBurnie, now represented by Lawrence C. Glynn, subsequently brought this diversity action, principally alleging claims for breach of contract and conversion against both defendants, and for breach of fiduciary duty against Rutledge only.[1] The essence of McBurnie's complaint is that Marsh's $2.3 million payment to Rutledge was intended not only to settle his claim for fees—which, McBurnie argues, was worth at most $412,000—but also to extinguish McBurnie's potential civil claims against Marsh.[2] In other words, McBurnie alleged that at least $1,888,000 of the settlement payment was meant for him. Alternatively, and somewhat inconsistently, McBurnie suggests that the entire $2.3 million was his "property," because McBurnie, not Rutledge, "owned" Marsh's payment of attorney's fees.

Defendants moved to dismiss; Rutledge moved to sanction Glynn pursuant to Rule 11 of the Federal Rules of Civil Procedure; and McBurnie moved for leave to amend his complaint. On

---

[1] The instant case is not McBurnie's first action against Marsh. *See McBurnie v. Marsh & McLennan Cos.*, No. 12-cv-3621 (JPO) (S.D.N.Y Apr. 7, 2014) ("*McBurnie I*"). McBurnie commenced this suit against Rutledge while *McBurnie I* was still pending. After voluntarily dismissing *McBurnie I*, he amended the complaint in the instant case to assert claims against Marsh.

[2] McBurnie states that he planned to bring actions against Marsh "for, *inter alia*, malicious prosecution, breach of contract, wrongful termination, unjust enrichment, *quantum meruit*, defamation and tortious interference, to name a few." McBurnie Br., No. 15-701-cv, at 19.

February 19, 2015, the District Court granted defendants' motion to dismiss and denied McBurnie leave to amend his complaint on the ground that his proposed amendment was futile. The District Court reserved decision on sanctions, and, following a hearing, denied Rutledge's motion on April 28, 2015. These appeals followed.

## DISCUSSION

### 1. Dismissal of McBurnie's Complaint

We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6). *Carpenters Pension Tr. Fund v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014). To survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and pleadings that "are no more than conclusions[ ] are not entitled to the assumption of truth." *Id.* at 678–79.

We agree with the District Court that McBurnie has failed to state a claim upon which relief can be granted. We consider McBurnie's principal claims in turn, beginning with Rutledge's alleged breach of fiduciary duty.

The parties agree that the District Court correctly stated the elements for a fiduciary-duty claim under New York law: "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 921 N.Y.S.2d 260, 264 (2d Dep't 2011) (internal quotation marks omitted); *accord Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011).[3] McBurnie seeks to satisfy the second element by alleging that Rutledge improperly "settled any and all of McBurnie's claims against Marsh" in the Settlement Agreement. *See* McBurnie Br., No. 15-701-cv, at 25. But as

---

[3] Elsewhere in his brief, McBurnie argues that he may obtain "[d]isgorgement of Rutledge's ill-gotten gains" even without alleging any direct economic loss. *See* McBurnie Br., No. 15-701-cv, at 48–49. But the cases McBurnie cites for this proposition concerned fraudulent concealment (which McBurnie does not allege) or derivative actions against corporate fiduciaries. New York courts and this Court have consistently held that a plaintiff alleging a breach of fiduciary duty in other contexts—including the context of attorney misconduct—must allege damages. *See, e.g.*, *Milbank, Tweed, Hadley & McCloy v. Boon*, 13 F.3d 537, 543 (2d Cir. 1994); *Gibbs v. Breed, Abbott & Morgan*, 710 N.Y.S.2d 578, 584 (1st Dep't 2000) ("[T]he proponent of a claim for a breach of fiduciary duty must, at a minimum, establish that the offending parties' actions were a substantial factor in causing an identifiable loss." (internal quotation marks omitted)).

4

the District Court correctly found, the Settlement Agreement did no such thing. That document, which McBurnie did not sign, unambiguously states that Rutledge had "no current authority to act on behalf of McBurnie." And it is black-letter law that an attorney may not waive a client's rights without authority to act on that client's behalf. *See, e.g.*, *Fennell v. TLB Kent Co.*, 865 F.2d 498, 503 (2d Cir. 1989); *see also* McBurnie Br., No. 15-701-cv, at 28 (noting that "Rutledge had *no authority* to settle anything" on behalf of McBurnie (emphasis in original)); *id.* at 33 (same). It was legally impossible, in other words, for Rutledge to have committed the misconduct alleged by McBurnie. For the same reason, McBurnie has also failed to plausibly allege that he suffered any cognizable harm from Rutledge's actions.[4]

McBurnie's breach-of-contract claim against Rutledge and Marsh for breach of the Settlement Agreement fails for a similar reason. McBurnie alleges that he was the intended third-party beneficiary of the Settlement Agreement. Like his claim for breach of fiduciary duty, McBurnie's breach-of-contract claim depends on the flawed premise that at least $1,888,000 of the Settlement Agreement's payment to Rutledge was meant to compensate McBurnie for waiving his purported claims against Marsh. But, as just discussed, the Settlement Agreement did not waive, and could not have waived, any of McBurnie's claims, and McBurnie has alleged nothing that plausibly suggests that any defendant believed otherwise.

McBurnie's additional breach-of-contract claim against Rutledge alone, alleging that Rutledge engaged in "egregious overbilling" in breach of the retainer agreement and that McBurnie was thus "entitled to a refund for fees paid to [Rutledge] that [Rutledge] did not earn," J.A., No. 15-701-cv, at 121, was properly dismissed. If there was any overbilling, it did not harm McBurnie: Marsh, not McBurnie, paid the fees; there is nothing to "refund" McBurnie.

Finally, the District Court correctly rejected McBurnie's claim for conversion, which relied on the idea that pursuant to his indemnification arrangement with Marsh, "attorney's fees belong to the client, not the attorney," and that McBurnie therefore had a right to the entire $2.3 million payment named in the Settlement Agreement. *See* McBurnie Br., No. 15-701-cv, at 54. This argument relies on a fundamental misunderstanding of indemnification, which "by definition" entails only reimbursement for expenses "that the indemnitee has actually incurred," not a lump-sum payment that the recipient may distribute at his discretion. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 179 (2d Cir. 2005). The cases that McBurnie cites for a contrary proposition involve federal fee-shifting provisions, which are irrelevant in interpreting "a contractual indemnity provision governed by state law." *Id.* at 180.

---

[4] Similarly, even if McBurnie has alleged that Rutledge labored under a conflict of interest when he tried to negotiate with Marsh for his fees while continuing to represent McBurnie—an issue we need not decide—McBurnie's claim for breach of fiduciary duty would still fail, because he has not plausibly alleged that he suffered any injury from that conflict.

5

## 2. Denial of Leave to Amend

McBurnie challenges the District Court's denial of leave to amend his complaint, a decision we review for "abuse of discretion." *See Knife Rights, Inc. v. Vance*, 802 F.3d 377, 389 (2d Cir. 2015). In support of his challenge, McBurnie briefly reiterates his argument, which we have just rejected, that the Settlement Agreement effectively waived his claims against Marsh. Otherwise, McBurnie makes no effort to explain why his proposed amendment would not be futile, other than to accuse the District Court of putting insufficient "thought or analysis into" the matter. McBurnie Br., No. 15-701-cv, at 64. We therefore have no reason to conclude that the District Court erred, much less "abused its discretion," in denying leave to amend.

## 3. Denial of Sanctions

We consider, finally, Rutledge's argument that the District Court erred in declining to sanction Glynn. We review a district court's denial of Rule 11 sanctions for abuse of discretion. *See Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012). "Sanctions may be—but need not be—imposed when court filings are used for an improper purpose, or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Id.* (internal quotation marks omitted). Even if a district court identifies a Rule 11 violation, the decision whether to impose a sanction is "committed to the district court's discretion." *Id.* (internal quotation marks omitted); *see also id.* ("In short, sanctions under Rule 11 are discretionary, not mandatory."). Here, the District Court concluded that McBurnie's arguments, though close to frivolous, contained "enough of a kernel of a theory" to avoid being objectively unreasonable. *See* Special App., No. 15-1727-cv, at 4. Even if we disagreed with that assessment,[5] we would see no reason to disagree with the court's decision not to award sanctions.

---

[5] We agree with the District Court that the Settlement Agreement was "at least sloppy," Special App., No. 15-1727-cv, at 4, and perhaps self-contradictory, when it disavowed Rutledge's authority to represent McBurnie but also stated that Rutledge "warrants and agrees that the payment of [$2.3 million] extinguishes any and all . . . claims that McBurnie has or might make against Marsh." J.A., No. 15-701-cv, at 113. We also note McBurnie's allegation that Rutledge pressured him to waive his right to sue Marsh, in order to advance Rutledge's fee negotiations. *See id.* at 69–70 (proposed settlement agreement). Although, for the reasons stated earlier, McBurnie's allegations do not state a claim for breach of fiduciary duty, breach of contract, or conversion, it was not entirely unreasonable for Glynn to find those allegations troubling and to believe that Rutledge's behavior had harmed McBurnie in a legally cognizable sense.

## CONCLUSION

We have reviewed all of the arguments raised by the parties in support of their respective appeals and find them to be without merit. For the foregoing reasons, we **AFFIRM** the District Court's orders of February 19, 2015, and April 28, 2015.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk