13-2678-cv
Carpenters Pension Trust Fund et al. v. Barclays PLC, et al.

In the

# United States Court of Appeals
## For the Second Circuit

————

August Term, 2013

No. 13-2678-cv

CARPENTERS PENSION TRUST FUND OF ST. LOUIS, ST. CLAIR SHORES POLICE & FIRE
RETIREMENT SYSTEM, POMPANO BEACH POLICE & FIREFIGHTERS' RETIREMENT
SYSTEM,

*Plaintiffs-Appellants*,

*v.*

BARCLAYS PLC, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., ROBERT DIAMOND,
MARCUS A.P. AGIUS, JOHN VARLEY, CHRISTOPHER LUCAS,

*Defendants-Appellees.*[*]

————

Appeal from the United States District Court
for the Southern District of New York.
No. 12-cv-5329 — Shira A. Scheindlin, *Judge*.

————

ARGUED: FEBRUARY 27, 2014
DECIDED: APRIL 25, 2014

————

————

[*] The Clerk of the Court is directed to amend the caption as set forth above.

Before: KATZMANN, *Chief Judge*, CABRANES, *Circuit Judge*, and BERMAN, *District Judge*[**]

————

Appeal from the United States District Court for the Southern District of New York (Shira A. Scheindlin, *Judge*), granting dismissal of the plaintiffs' securities fraud claims on the grounds that the plaintiffs failed sufficiently to plead the elements of loss causation and materiality.  The plaintiffs allege that the defendants, a multinational bank and several of its former officers, including its former President, willfully misrepresented the bank's borrowing costs between 2007 and 2009 and knowingly submitted false information relating to the London Interbank Offered Rate ("LIBOR").  We hold, with respect to the alleged misrepresentations of Barclays's borrowing costs, that the plaintiffs sufficiently have pled loss causation under a theory of corrective disclosure.  We also hold that Barclays's statements regarding its "minimum control requirements" were not materially false.

Accordingly, we **AFFIRM** in part (insofar as the District Court dismissed plaintiffs' claims based upon Barclays's minimum control statements), and **VACATE** in part (insofar as the District Court dismissed plaintiffs' claims based upon Barclays's 2007–2009 submission rates and defendant Diamond's 2008 conference call remarks), the judgment of the District Court, and remand for further proceedings.

————

> SUSAN K. ALEXANDER (Andrew S. Love, Samuel H. Rudman, and David A. Rosenfeld, *on the brief*), Robbins Geller Rudman & Dowd LLP, San Francisco, CA, and New York, NY, *for Plaintiffs-Appellants Carpenters Pension Trust Fund of St. Louis, St. Clair Shores Police & Fire Retirement System, Pompano Beach Police & Firefighters' Retirement System.*

---

[**] The Honorable Richard M. Berman, United States District Judge for the Southern District of New York, sitting by designation.

JEFFREY T. SCOTT (David H. Braff and Matthew J. Porpora *on the brief*), Sullivan & Cromwell LLP, New York, NY (Jonathan D. Schiller and Michael Brill, Boies Schiller & Flexner LLP, New York, NY and Washington, D.C., *on the brief*), *for Defendants-Appellees Barclays PLC, Barclays Bank PLC, Barclays Capital Inc., Robert Diamond, Marcus A.P. Agius, John Varley, Christopher Lucas.*

CHERYL A. KRAUSE (Andrew J. Levander and Elisa T. Wiygul, *on the brief*), Dechert LLP, Philadelphia, PA and New York, NY, *for Defendant-Appellee Robert Diamond.*

————

RICHARD M. BERMAN, *District Judge*:

Plaintiffs-Appellants Carpenters Pension Trust Fund of St. Louis, St. Clair Shores Police & Fire Retirement System, and Pompano Beach Police & Firefighters' Retirement System (collectively, "plaintiffs") appeal from a May 14, 2013 judgment of the District Court for the Southern District of New York (Shira A. Scheindlin, *Judge*),  dismissing their putative class action claims against Defendants-Appellees Barclays PLC and related Barclays entities ("Barclays"), and several of Barclays's former officers, including its former President, Robert Diamond ("individual defendants," and collectively, "defendants").  Plaintiffs allege that from approximately August 2007 through January 2009, Barclays, a multinational bank, knowingly misrepresented (*i.e.*, understated) its cost of borrowing funds by submitting false information for the purpose of calculating

the London Interbank Offered Rate ("LIBOR"), in violation of § 10(b) of the

Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange

Commission Rule 10b–5 ("Rule 10b–5").  Plaintiffs allege that defendant

Diamond also made misleading statements relating to LIBOR, including his

remarks during a 2008 conference call with market analysts in which he stated

that Barclays was "categorically not paying higher rates in any currency."

Plaintiffs also allege that Barclays made misleading statements in its SEC filings

regarding the company's "internal controls."  Plaintiffs assert control person

liability claims against the individual defendants under § 20(a) of the Exchange

Act.

On June 27, 2012, Barclays's manipulation of 2007–2009 LIBOR data was

disclosed as a result of publicly announced settlement and non-prosecution

agreements among Barclays and the United States Department of Justice

("DOJ"), the U.S. Commodity Futures Trading Commission ("CFTC"), and the

United Kingdom's Financial Services Authority ("FSA") ("Settlement

Agreements").  The Settlement Agreements required Barclays to pay fines

totaling $450 million and included detailed findings of fact disclosing for the first

time that during the 2007–2009 time period, "Barclays submitted rates that were

false because they were lower than Barclays otherwise would have submitted and contrary to the definition of LIBOR."[1]   The following day, the price of Barclays's American Depository Shares dropped 12%, resulting in significant financial losses to investors, including members of plaintiffs' proposed class.

We hold that the District Court erred in concluding, prior to any discovery, that plaintiffs failed to plead loss causation.  Plaintiffs' allegations, among others, that the June 28, 2012 decline in Barclays's stock price resulted from the revelation of Barclays's misrepresentations of its 2007–2009 LIBOR rates and defendant Diamond's conference call misrepresentation of Barclays's borrowing costs present a plausible claim.  We also hold that the District Court correctly concluded that Barclays's statements in its SEC filings relating to the company's internal control requirements were not materially false.  Accordingly, we VACATE in part, and AFFIRM in part, the judgment of the District Court.

---

[1] On March 14, 2014, the U.S. Federal Deposit Insurance Corporation, acting on behalf of thirty-eight failed banks, filed suit in the Southern District of New York seeking damages against the sixteen contributor banks on the U.S. Dollar LIBOR panel, including Barclays. *F.D.I.C. et al v. Bank of America Corp. et al.*, No. 14-cv-1757 (NRB).  In that action, the FDIC asserts that Barclays and the other defendant banks "fraudulently and collusively suppressed" the U.S. Dollar LIBOR rate "from August 2007 through at least mid-2011."

## I. BACKGROUND

Plaintiffs' complaint alleges the following facts, which are presumed to be true for the purposes of this appeal.

At all times relevant to plaintiffs' claims, Barclays was one of several contributor banks whose borrowing cost data was used to calculate LIBOR.[2] LIBOR rates are calculated by Thomson Reuters Corporation based upon the daily submissions ("submission rate") of each contributor bank.  Each contributor bank is asked to derive its submission rate by answering the following question: "At what rate could you borrow funds, were you able to do so by asking for and then accepting inter-bank offers in a reasonable market size just prior to 11 am?"  Once calculated, LIBOR rates are distributed daily to the market by Thomson Reuters.  Thomson Reuters also distributes on a daily basis the names of each contributor bank, including Barclays, and each bank's daily submission rates.  Submission rates, in addition to representing a bank's borrowing costs, may be perceived by the market as an indicator of a bank's

---

[2] LIBOR is a benchmark interest rate produced on a daily basis for ten currencies, including the U.S. Dollar, Pound Sterling, and the Euro.  LIBOR is a component of trillions of dollars of complex financial transactions worldwide.

financial health. A (relatively) high submission rate, for example, might indicate that a contributor bank is experiencing financial difficulties.

Plaintiffs allege that from August 2007 until January 2009—both before and during the global financial crisis—Barclays directed its employees to submit inaccurate submission rates to Thomson Reuters, *i.e.*, rates that were, in fact, lower than the rates at which Barclays legitimately believed it could borrow funds. Barclays did so "in order to preserve and/or enhance Barclays's reputation from what it believed were negative and unfair media and market perceptions." Barclays's false LIBOR submissions presented a misleading picture of Barclays's financial condition and artificially inflated Barclays's share price. Defendant Robert Diamond, Barclays's President from June 2005 until December 31, 2010 and its CEO from January 1, 2011 until July 3, 2012 when he resigned from that position, contributed to and participated in the LIBOR rate deception. During a 2008 conference call with analysts, Diamond denied that Barclays was paying higher borrowing rates than other banks, by stating: "We're categorically not paying higher rates in any currency." Plaintiffs allege Diamond's statement was false because, in fact, Barclays was understating its rates to appear similar to or lower than other banks' submission rates. The complaint does not allege that

Barclays submitted false LIBOR submission rates after January 2009, but it does contend that Barclays did not disclose that its 2007–2009 submission rates were false until June 27, 2012.[3]

Plaintiffs also allege that Barclays made misrepresentations in its 2006–2011 SEC filings, including the statement that "[m]inimum control requirements have been established for all key areas of identified risk."  It is plaintiffs' position that this statement was materially false because, at the time it was made, Barclays had no specific systems or controls for its LIBOR submissions process.

On June 27, 2012, Barclays announced that it had entered into the Settlement Agreements with the DOJ, CFTC, and FSA.  As noted, Barclays agreed to pay fines totaling $450 million and admitted for the first time that, "[f]rom approximately August 2007 through at least approximately January 2009, Barclays often submitted inaccurate Dollar LIBORs that under-reported its

---

[3] Indeed, Defendants concede this point.  At oral argument of this appeal on February 27, 2014, the following colloquy took place: The Court: "[At] any time between when [Barclays] started giving out the correct [LIBOR] information [after January 2009], did anybody, either Mr. Diamond or anybody from Barclays, apart from giving out the appropriate borrowing rate, did they ever say 'oh, by the way, from 2007 to 2009 we gave you an incorrect rate?"  Barclays's Counsel: "No, they did not."

perception of its borrowing costs and its assessment of where its Dollar LIBOR submission should have been."

In an opinion dated May 13, 2013, the District Court dismissed all of plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6). *See Gusinsky v. Barclays PLC*, 944 F. Supp. 2d 279 (S.D.N.Y. 2013). With respect to Barclays's submission rates and defendant Diamond's 2008 conference call remarks, the District Court concluded that plaintiffs had failed to present a plausible theory of "loss causation."[4] The District Court concluded that even if Barclays's false 2007–2009 submission rates and defendant Diamond's remarks had misled the market and artificially inflated the value of Barclays's shares, any share inflation would have been rectified prior to June 27, 2012 by an efficient market's incorporation of Barclays's 2009–2012 submission rates into the company's share price. The District Court also dismissed plaintiffs' claims based upon Barclays's alleged internal control misrepresentations, on the grounds that these statements were "puffery" and were not materially false or misleading. The Court also dismissed plaintiffs' § 20(a) control person liability claims because it had dismissed

---

[4] The element of loss causation requires plaintiffs to prove that "that the subject of the fraudulent statement or omission was the cause of the actual loss suffered." *Suez Equity Investors, L.P. v. Toronto–Dominion Bank,* 250 F.3d 87, 95 (2d Cir. 2001).

plaintiffs' underlying claims under § 10(b) and Rule 10b–5.  And, the District

Court denied as "futile" plaintiffs' request for leave to file a third amended

complaint.[5]

Plaintiffs appeal from the District Court's judgment with respect to two

categories of alleged misrepresentations by defendants: (1) misrepresentations of

Barclays's borrowing costs in 2007–2009; and (2) statements contained in

Barclays's SEC filings concerning the company's internal controls.

## II. DISCUSSION

We review a District Court's grant of a motion to dismiss under Rule

12(b)(6) for failure to state a claim *de novo*, "accepting the complaint's factual

allegations as true and drawing all reasonable inferences in the plaintiff's favor."

*Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014).  "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[5] On May 28, 2013, plaintiffs moved for reconsideration of the District Court's denial of leave to amend.  In support of their motion, plaintiffs submitted a Proposed Third Amended Complaint containing additional allegations relating to plaintiffs' loss causation theory and Barclays's minimum control statements. The District Court denied plaintiffs' motion for reconsideration.

To maintain a private damages action under § 10(b) and Rule 10b–5,

> a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.

*Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 157 (2008)

(citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)).

## A. Misrepresentations of Barclays's Borrowing Costs

The District Court concluded that defendants' misrepresentations of Barclays's 2007–2009 borrowing costs plausibly could not have caused plaintiffs' losses. To plead loss causation, plaintiffs must allege "that the subject of the fraudulent statement or omission was the cause of the actual loss suffered." *Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001). They may do so *either* by alleging (a) "the existence of cause-in-fact on the ground that the market reacted negatively to a corrective disclosure of the fraud;" or (b) that "'that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement.'"[6] *In re*

---

[6] Plaintiffs' complaint does not appear specifically to identify which theory of loss causation they rely upon.

*Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511, 513 (2d Cir. 2010) (quoting *ATSI*

*Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 107 (2d Cir. 2007); *id.* at

511("Establishing either theory as applicable would suffice to show loss

causation."); *see also Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 175 n.4 (2d

Cir. 2005).

In order to plead corrective disclosure, plaintiffs must plausibly allege a

disclosure of the fraud by which "the available public information regarding the

company's financial condition [was] corrected," *In re Omnicom*, 597 F.3d at 511,

and that the market reacted negatively to the corrective disclosure. *Lentell*, 396

F.3d at 175. Plaintiffs need not demonstrate on a motion to dismiss that the

corrective disclosure was the *only* possible cause for decline in the stock price. *See*

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir.

2003) ("[I]f the loss was caused by an intervening event, . . . the chain of

causation will not have been established. But such is a matter of proof at trial

and not to be decided on a Rule 12(b)(6) motion to dismiss."). This is consistent

with the majority of district courts in our Circuit. *See, e.g., In re Bear Stearns Cos.,*

*Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 507 (S.D.N.Y. 2011) ("[A]t

the motion to dismiss stage, the [complaint] need not rule out all competing

theories for the drop in . . . stock price; that is an issue to be determined by the trier of fact on a fully developed record."); *King County, Wash. v. IKB Deutsche Industriebank AG*, 708 F. Supp. 2d 334, 343 (S.D.N.Y. 2010) ("[N]either *Lentell* nor *Dura* burden plaintiffs with pleading that *no other possible event* could have caused plaintiffs' losses . . . .").

The allegations in the complaint are far more persuasive as to corrective disclosure than they are to the theory of materialization of risk.[7]  Plaintiffs contend that Barclays misrepresented (understated) its borrowing costs and its financial condition in 2007–2009 by submitting false LIBOR submission rates, and that defendant Diamond also misrepresented Barclays's borrowing costs by denying publicly and "categorically" that Barclays was paying higher borrowing rates than other banks.  Plaintiffs also allege that the falsity of these misrepresentations was revealed to the public for the first time in the Settlement Agreements.  Indeed, defendants conceded at oral argument that this was the

---

[7] Indeed, plaintiffs' risk materialization theory is simply untenable.  While Barclays's false submission rates and defendant Diamond's 2008 remarks may have concealed the risk that Barclays would experience negative financial consequences as a result of its understated borrowing costs, plaintiffs do not allege that any such risk materialized, for example, in the form of a liquidity crisis or other financial distress, at the time of the decline in Barclays's stock price in June 2012.  *See Lentell*, 396 F.3d at 175.

(first) occasion that Barclays disclosed its false 2007–2009 submission rates. *See ante* note 4. And, plaintiffs have alleged that the market reacted negatively to the June 27, 2012 corrective disclosure by a significant (12%) decline in Barclays's stock on June 28, 2012. *See Lentell*, 396 F.3d at 175. Many district courts in this Circuit have found similar allegations sufficient to plead loss causation under a theory of corrective disclosure. *See, e.g., In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 273–74 (S.D.N.Y. 2010) (loss causation adequately pled where plaintiff "identifie[d] several corrective disclosures that allegedly demonstrated the falsity of defendants' previous statements, and also allege[d] that the value of plaintiffs' Ambac stock declined immediately following the corrective disclosures"); *In re Take–Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 287–88 (S.D.N.Y. 2008) (press release announcing that the SEC had commenced an investigation into certain stock options grants, coupled with a 7.5% stock price drop the next day, created a sufficient causal connection to plead loss causation); *In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 252–53 (S.D.N.Y. 2007) (4.5% drop in market price of shares in response to announcement of SEC investigation into options backdating was sufficient to plead loss causation); *Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11-cv-2700, 2012 WL 3957916, at *16–17 (S.D.N.Y. Sep. 10,

2012) (allegations that company's stock price fell 18% immediately following a corrective disclosure sufficient to plead loss causation).

In dismissing plaintiffs' claims, the District Court perceived a temporal "disconnect" between Barclays's submission of false LIBOR rates and the disclosure of the fraud in June 2012, and concluded that Barclays's (unchallenged) submission rates after January 2009 necessarily would have supplanted any prior LIBOR-related misinformation. The District Court found it implausible that an efficient market "would fail to digest three years of non-fraudulent Submission Rates and other more detailed financial information, and would instead leave intact artificial inflation as a result of fraudulent Submission Rates [in 2007–2009]." *Gusinsky*, 944 F. Supp. 2d at 292.

While expressing no view on the ultimate merits of plaintiffs' theory of loss causation, we hold that the court below reached these conclusions prematurely. The assumption that Barclays's false 2007–2009 submission rates were somehow corrected after January 2009 (but before June 27, 2012) is inconsistent with the complaint's allegations and defendants' concession at oral argument that the misrepresentations were not brought to light until the disclosure of the Settlement Agreements. The complaint plausibly alleges that

submission rates are non-cumulative—that is, that each day's submission rates reveal information about a bank's borrowing costs for that particular day. Thus, while Barclays's 2009–2012 submission rates may have provided accurate information about the company's borrowing costs and financial condition for the period 2009–2012, they did not correct the earlier years' misstatements. The complaint plausibly alleges that Barclays's and Diamond's misrepresentations were not corrected until June 27, 2012.

We cannot conclude, as a matter of law and without discovery, that any artificial inflation of Barclays's stock price after January 2009 was resolved by an efficient market prior to June 27, 2012. The efficient market hypothesis, premised upon the speed (efficiency) with which new information is incorporated into the price of a stock, does not tell us how long the inflationary effects of an uncorrected misrepresentation remain reflected in the price of a security. We agree with the Eleventh Circuit that, in general, "[s]o long as the falsehood remains uncorrected, it will continue to taint the total mix of available public information, and the market will continue to attribute the artificial inflation to the stock, day after day." *Findwhat Investor Group v. Findwhat.com*, 658 F.3d 1282, 1310 (11th Cir. 2011). In this case, whether the effects of Barclays's wilfully false

LIBOR representations dissipated before June 2012 is a question of fact that can be answered only upon a more fully developed record.[8]

Defendants argue that Barclays's LIBOR misrepresentations were "stale" at the time of the June 27, 2012 corrective disclosure, and that the decline in Barclays's stock price on June 28, 2012 should be attributed to the imposition of regulatory penalties against Barclays, rather than to the disclosures contained in the Settlement Agreements. *See* Appellees' Br. 45, 53–54. To be sure, a securities fraud plaintiff must "demonstrate a causal connection between the content of the alleged misstatements or omissions and the harm actually suffered," *Lentell*, 396 F.3d at 174 (quoting *Emergent Capital*, 343 F.3d at 199), and may not rely on mere "attenuated" connections, *id*. But defendants' arguments here involve questions of fact and should not be resolved upon a motion to dismiss.

For the foregoing reasons, we hold that plaintiffs have adequately pled loss causation with respect to their claims based upon Barclays's false submission rates and defendant Diamond's 2008 remarks. We also conclude that plaintiffs have sufficiently pled materiality with respect to these misrepresentations—*i.e.*,

---

[8] Plaintiffs' theory of continued price inflation is supported by allegations in their Proposed Third Amended Complaint, which includes an analysis conducted by an "economics expert in loss causation."

that there was a substantial likelihood that the disclosure of Barclays's true

borrowing costs between 2007 and 2009 "'would have been viewed by the

reasonable investor as having significantly altered the 'total mix' of information

made available.'" *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988) (quoting *TSC*

*Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).[9]  In any event, given the

fact-specific nature of the question raised here, it would be inappropriate to

dismiss upon a Rule 12(b)(6) motion.  *See ECA & Local 134 IBEW Joint Pension*

*Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) ("[A]

complaint may not properly be dismissed . . . on the ground that the alleged

misstatements or omissions are not material unless they are so obviously

unimportant to a reasonable investor that reasonable minds could not differ on

the question of their importance."  (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d

154, 162 (2d Cir. 2000) (ellipsis in original)); *see also In re Morgan Stanley Info. Fund*

*Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010) ("[B]ecause the materiality element

---

[9] While the District Court did not address the materiality of Barclays's submission rates and Diamond's 2008 conference call remarks, the parties have raised this issue on appeal.  *See MBIA Inc. v. Fed. Ins. Co.*, 652 F.3d 152, 171 (2d Cir. 2011) (resolving an issue not reached by the district court "in order to minimize inefficiency and conserve judicial resources").

presents 'a mixed question of law and fact,' it will rarely be dispositive in a motion to dismiss[.]" (quoting *ECA*, 553 F.3d at 197)).

### B. Misrepresentation of Barclays's Internal Controls

The District Court concluded that statements contained in Barclays's SEC filings concerning the company's minimum control requirements were not materially false because they were not specifically tied to Barclays's LIBOR practices. We agree with the District Court.

The Private Securities Litigation Reform Act ("PSLRA") provides that a plaintiff bringing a securities fraud claim must, at the pleading stage,

> specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u–4(b)(1)(B). Thus, plaintiffs asserting claims under Rule 10b–5 "must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004).

Plaintiffs contend that the statements made by Barclays in its SEC filings that minimum control requirements had been established for all key areas of

identified risk were false because Barclays "had no specific systems or controls

for its LIBOR and EURIBOR submissions process until December 2009."

Appellants' Br. 9.  But Barclays's statements do not mention LIBOR, nor do they

say that Barclays had established "specific systems or controls" relating to LIBOR

submission rates.  Based upon the SEC filings referenced in the complaint,

Barclays does not appear to have made representations that it had established

internal controls for LIBOR, but only that it had established controls for other

areas of its business.  Plaintiffs fail, therefore, to demonstrate with specificity that

Barclays's minimum control statements were false or misleading.  *See Rombach*,

355 F.3d at 174; *see also In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*, No. 08-cv-

11278, 2009 WL 4823923, at *14 (S.D.N.Y. Dec. 14, 2009) (finding statements not

false or misleading where the "[alleged] fraud consisted of ANZ's

misrepresentation of its 'equity finance practices'" but "[t]hose practices . . . are

not the subject of the representations cited in the Complaint").[10]

_____

[10] In their Proposed Third Amended Complaint, plaintiffs allege that Barclays "had in fact identified the Libor-submission process as a key area of identified risk."  This contention appears inconsistent with Barclays's SEC filings, which do not list LIBOR as one of the risk categories identified by Barclays.  Plaintiffs' allegation appears also to be at odds with the FSA's June 27, 2012 findings of fact, which plaintiffs incorporated by reference into their complaint, and which state

**C. Section 20(a) Claims**

To state a claim of control person liability under § 20(a), "a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI*, 493 F.3d at 108. Because we vacate the District Court's dismissal of plaintiffs' 10b–5 claims with respect to Barclays's 2007–2009 submission rates and defendant Diamond's 2008 remarks, we also vacate the District Court's dismissal of plaintiffs' § 20(a) control person liability claim as to these issues.[11] And, because we affirm the District Court's dismissal of plaintiffs' 10b–5 claim relating to Barclays's internal control statements, we also affirm the dismissal of plaintiffs' § 20(a) claim with respect to these statements.

**D. Leave to Amend**

Plaintiffs argue that the District Court improperly denied their request for leave to amend their complaint. We agree with the District Court that

---

that "Barclays did not believe the submission of LIBOR was an area of significant risk."

[11] We leave it to the District Court to consider whether plaintiffs have properly alleged the remaining elements of a § 20(a) claim.

submission of a third amended complaint would be futile in so far as it relates to

Barclays's internal control statements.

**CONCLUSION**

To summarize, we hold that:

(1) The District Court improperly dismissed plaintiffs' claims under §§ 10(b) and 20(a) of the Exchange Act, and Rule 10b–5, based upon Barclays's 2007–2009 submission rates and defendant Diamond's 2008 conference call remarks.

(2) The District Court correctly dismissed plaintiffs' claims based upon Barclays's statements regarding its minimum control requirements.

(3) The District Court correctly denied leave to amend.

For the reasons stated above, we **AFFIRM** in part (insofar as the District Court dismissed plaintiffs' claims based upon Barclays's minimum control statements), and **VACATE** in part (insofar as the District Court dismissed plaintiffs' claims based upon Barclays's 2007–2009 submission rates and defendant Diamond's 2008 conference call remarks), the District Court's May 14, 2013 judgment, and **REMAND** the case for further proceedings consistent with this opinion.