19-202
*Hoit v. Capital District Transportation Authority*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of March, two thousand twenty.

PRESENT: RALPH K. WINTER,
           PETER W. HALL,
               *Circuit Judges*,
           DENISE COTE,
               *District Judge.*\*

_____

KEVIN HOIT,
           *Plaintiff - Appellant,*

                  v.                                   19-202

---

\* Judge Denise Cote of the United States District Court for the Southern District of New York, sitting by designation.

CAPITAL DISTRICT TRANSPORTATION AUTHORITY, CARM BASILE, STEVE WACKSMAN, LANCE ZARCONE, TONY CLANTON, FRANK MANCINI,
      *Defendants - Appellees*,

JUAN BAEZ,
      *Defendant*.[†]

---------------------------------------------------------------------

FOR APPELLANT KEVIN HOIT:        MARIA K. DYSON (Elmer R. Keach III, *on the brief*), Law Offices of Elmer Robert Keach, III, PC, Albany, NY.

FOR APPELLEES CAPITAL DISTRICT TRANSPORTATION AUTHORITY, CARM BASILE, STEVE WACKSMAN, AND LANCE ZARCONE:      DANIELLE N. MEYERS, O'Connor, O'Connor, Bresee & First, P.C., Albany, NY.

FOR APPELLEES TONY CLANTON AND FRANK MANCINI:      LISA F. JOSLIN (Daniel A. Jacobs, *on the brief*), Gleason, Dunn, Walsh & O'Shea, Albany, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Hummel, *M.J.*).

---

[†] The Clerk of Court is requested to amend the caption to conform to the above.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED** in part and **VACATED** and **REMANDED** in part.

Kevin Hoit appeals from the final judgment of the United States District Court for the Northern District of New York entered on December 20, 2018 granting summary judgment for the Capital District Transportation Authority ("CDTA"), Tony Clanton, and Frank Mancini,[1] as well as from the decision and order of the District Court (Suddaby, *C.J.*) entered on July 19, 2016, which dismissed several of Hoit's other claims. On Hoit's last day of work at the CDTA, several of his male coworkers assaulted and tea-bagged[2] him (hereinafter, the "Incident"). Hoit sued, asserting various federal and state law claims. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the arguments on appeal, which we reference only as necessary to explain our decision to affirm.

---

[1] The District Court entered default judgment against Juan Baez.

[2] This Court has defined tea-bagging as "a hazing act—indeed a form of sexual assault—during which the victim is pinned down on the floor by several [people] while another [person] rubs his genitalia in the victim's face." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 161 (2d Cir. 2006).

I.

The following facts are undisputed or are taken in the light most favorable to the plaintiff. Hoit worked as a mechanic in the CDTA's Albany garage. In October 2013, he gave notice that he was resigning from the CDTA to take a higher-paying job at a different company. A few weeks later, on Hoit's last day at the CDTA, Hoit's fellow mechanic, Clanton, grabbed him while he was working, wrestled him down to the ground, and pinned him face-down. Clanton, sitting on top of Hoit's buttocks, kept him pinned to the floor and "dry humped" him by "rubbing his hips and groin on [Hoit's] back, while making humping noises and telling [Hoit] to 'Let it happen. Let it happen.'" J. App. 1914; *see id*. at 1535, 1962. Hoit yelled at Clanton to get off of him and physically struggled to get away. Then Baez, a foreman for the mechanics, came running over, pulled his pants down and kneeled over Hoit's head in his boxer briefs, placing his clothed testicles on Hoit's head. Clanton continued to hold Hoit down during the Incident. Meanwhile, Mancini, a foreman for the service technicians, recorded a video of the Incident on his phone. After the Incident, Hoit worked the remainder of his shift, taking a cigarette break with Clanton and a meal break with Baez and Mancini.

Hoit never reported the Incident to anyone at the CDTA. When the Assistant Superintendent of Maintenance, Steve Wacksman, learned of the

4

Incident from a CDTA employee, Wacksman notified the Human Resources Department. The Superintendent of Maintenance commenced an investigation. Clanton, Mancini, and Baez were suspended pending the investigation. Following the investigation, Baez was terminated, and Clanton and Mancini were suspended for ten days, subjected to last chance agreements, and required to undergo harassment prevention training.

## II.

We review a district court's grant of a Rule 12(b)(6) motion to dismiss *de novo*, "accepting the complaint's factual allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014) (internal quotation marks omitted). "We review a district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in [that party's] favor." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005). "We will affirm the judgment only if there is no genuine issue as to any material fact, and if the moving party is entitled to a judgment as a matter of law." *Id*. (citing Fed. R. Civ. P. 56(c)).

## III.

We address the liability of each defendant in turn.

## A. CDTA

We consider first Hoit's hostile work environment claim under the New York State Human Rights Law ("NYSHRL"). The NYSHRL prohibits employers from discriminating against an individual "because of . . . sex . . . in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). To establish a hostile work environment claim against an employer, a plaintiff must show, first, that "the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (internal quotation marks omitted); *see also Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013) (for purposes of determining existence of hostile work environment, "[h]ostile work environment claims under both Title VII and the NYSHRL are governed by the same standard"). "Although isolated incidents ordinarily will not rise to the level of a hostile work environment, even a single incident of sufficient severity may so alter the terms and conditions of employment as to create such an environment." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004); *see also Feingold*, 366 F.3d at 150 ("[A] single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace." (alterations and internal quotation marks omitted)). Second, the plaintiff must

show that the employer "encourage[ed], condon[ed], or approv[ed]" the sexually harassing conduct. *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 311 (2004) (internal quotation marks omitted).

Hoit argues that the terms and conditions of his employment were altered "when he was forcibly pinned to the ground, dry-humped by his co-worker, and tea-bagged by his supervisor." Appellant Br. 38. He does not contend that the CDTA failed to respond appropriately to the Incident but, rather, that the CDTA should be held liable because it "knew or should have known about the sexually explicit environment that permeated the CDTA workplace" leading up to the Incident. *Id.* at 23.

Even assuming the Incident altered the terms and conditions of Hoit's employment, his hostile work environment claim fails because the evidence of pre-Incident misconduct does not provide a basis for concluding that the CDTA encouraged, condoned, or approved the kind of conduct that Hoit suffered during the Incident. Nothing like the Incident had ever happened to Hoit before at the CDTA. Nor does Hoit claim to have ever observed such conduct prior to the Incident. Instead, he relies largely on rumors about Baez and Clanton and on observations of conduct less serious than the Incident. *See, e.g.*, J. App. 1023–25, 1036–1038 (Hoit heard that Baez dry humped someone else and routinely exposed

7

his penis on the job); *id*. at 1138–42 (Mancini heard rumors that Baez inappropriately exposed his penis); *id*. at 669 (Clanton heard rumors about Baez engaging in "sexual harassment stuff" but did not know any details); *id*. at 914 (Another mechanic heard through "[s]hop talk" that Baez exposed himself at work); *id*. at 415–16 (Baez testified that he heard rumors that Clanton had dry humped another employee before Hoit); *id*. at 1575 (One CDTA employee regarded Clanton as "one of the most inappropriate people at CDTA": "[s]macking people on the butt, grabbing people, throwing them to the ground, horsing around, fake wrestling with guys, knocking tools off your box and things of that nature"). There is, moreover, no evidence that the CDTA received any complaints about such conduct except for one harassment complaint against Baez in 2009, to which the CDTA responded appropriately.[3] Even if the CDTA was aware of all the other conduct, we cannot conclude that the CDTA should have acted upon it as gender-based discrimination in the absence of complaint. *Cf. Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (For sexually hostile work environment to exist, "the victim must subjectively perceive the work

---

[3] The complaint alleged that Baez showed pornography to the complaining employee while at work. In response, Baez was counseled regarding appropriate use of the Internet, issued a written warning, and enrolled in a course for "Management Skills for First-Time Supervisors." J. App. 254.

environment to be abusive." (internal quotation marks omitted)); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (cautioning courts not to "mistake ordinary socializing in the workplace—such as male-on-male horseplay . . .—for discriminatory 'conditions of employment'" and emphasizing "the social context in which particular behavior occurs and is experienced by its target").

Hoit also challenges the dismissal of his § 1983 claim alleging that the CDTA violated the Fourteenth Amendment by implementing policies or practices that caused the sexual harassment or by failing to implement or enforce policies or practices to prevent or remedy it. We affirm dismissal of this claim for substantially the same reasons discussed above. *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 744 (2d Cir. 2003) ("Section 1983 sexual harassment claims that are based on a 'hostile environment' theory . . . are governed by traditional Title VII 'hostile environment' jurisprudence."). We note, too, that the CDTA had a harassment prevention policy and annual training for employees addressing discrimination and harassment in the workplace.[4]

---

[4] Our analysis with regard to the CDTA also forecloses Hoit's § 1983 claims against Basile, Wacksman, and Zarcone, who were not directly involved in the Incident and therefore could only be held liable under a policy/practice theory or for failing to remedy a known violation. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

Finally, Hoit argues that the District Court should have directly imputed liability to the CDTA because the conduct at issue was engaged in by supervisors. It is true, under Title VII, that an employer can be held strictly liable for the discriminatory conduct of a supervisor if the supervisor's conduct culminates in a tangible employment action. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). But Hoit does not assert a Title VII claim here, and the strict liability rule does not apply in the NYSHRL context or the § 1983 context. *See State Div. of Human Rights on Complaint of Greene v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 687 (1985) ("An employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it." (internal quotation marks omitted)); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("[L]ocal governments are responsible only for their *own* illegal acts." (internal quotation marks omitted)); *Hernandez v. United States*, 939 F.3d 191, 206 (2d Cir. 2019) ("Municipalities are not vicariously liable under § 1983 for their employees' actions." (internal quotation marks omitted)). Thus, the CDTA cannot be held liable merely because Baez and Mancini were supervisors.

## B. Clanton

First, Hoit challenges the District Court's conclusion that Clanton cannot be held liable under § 1983 because he was not acting under color of state law. The

District Court reasoned that the Amended Complaint "fail[ed] to allege facts plausibly suggesting that Defendant Clanton's actions in restraining Plaintiff were made possible only because he was clothed with the authority of state law or that he was misusing some power that he possessed by virtue of state law," and that the fact Clanton "was employed by CDTA, on duty, in uniform, and on CDTA's premises during work hours is insufficient to plausibly suggest that he was acting under color of state law." Sp. App. 23–24. We identify no error in the District Court's analysis. Since "there is no bright line test for distinguishing personal pursuits from activities taken under color of law," we look to the nature of the officer's act to determine whether he acted under color of state law, not merely his "status" of being on or off official duty. *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994) (internal quotation marks omitted); *see also Screws v. United States*, 325 U.S. 91, 111 (1945) (holding that § 1983 does not pertain to the "personal pursuits" of government officials); *Patterson*, 375 F.3d at 230 (2d Cir. 2004) (observing that claims of harassment by "nonsupervisory co-workers" have been construed by other circuits as "personal-frolic hazing or horseplay and not as state action"); *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996) (holding that a defendant who sexually harassed and assaulted his secretary did not do so under color of state law even though the relevant events occurred in an office where the defendant

11

regularly conducted city business and while he was a city employee). It is undisputed that Clanton exercised no supervisory authority over Hoit at the time of the Incident. Moreover, Clanton's assault of Hoit was a "personal pursuit" unrelated to Clanton's duties as a mechanic. *See Screws*, 325 U.S. at 111.

With regard to Hoit's NYSHRL claim against Clanton, the District Court granted summary judgment for Clanton on the ground that Clanton could not be held liable under the aiding-and-abetting provision of the NYSHRL. The court reasoned that, under the NYSHRL, it is an employer's participation in the discriminatory practice which serves as the predicate for the imposition of accessory liability, such that the failure of Hoit's NYSHRL claim against the CDTA foreclosed his aiding-and-abetting claim against Clanton. We agree with the District Court that because there is no employer liability—either for the CDTA or for any employee capable of being considered an "employer" within the meaning of the NYSHRL—there can be no accessorial liability for Clanton. *See Murphy v. ERA United Realty*, 674 N.Y.S.2d 415, 417 (2d Dep't 1998) ("It is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting."). Indeed, Hoit does not challenge this reasoning on appeal.

Rather, Hoit argues that the District Court should have considered whether

12

Clanton was primarily liable under the NYSHRL for his own conduct of tackling and dry humping Hoit. This argument fails because Clanton, as a "coemployee who has not been shown to have any ownership interest in the corporate employer or to have the power to do more than carry out personnel decisions made by others" is not subject to liability under the NYSHRL except as an aider-and-abettor. *Id.* at 417; *see also* N.Y. Exec. Law § 296.

## C. Mancini

Hoit challenges the dismissal of his § 1983 claim against Mancini.[5] Although Mancini was a CDTA foreman, it is undisputed that he was not Hoit's supervisor.[6] There is no evidence that Mancini in any way used his authority as a foreman to facilitate his recording of the Incident. Accordingly, Hoit has provided no basis for a finding that Mancini acted under color of state law. *See Patterson*, 375 F.3d at 230 ("[M]ere employment by the state does not mean that the employee's every

---

[5] Hoit sought to file a second amended complaint solely to add a NYSHRL claim against Mancini for aiding and abetting Baez's misconduct. The District Court denied Hoit's motion to amend, reasoning that a claim against Mancini for aider-and-abettor liability would be futile because the court had already dismissed the NYSHRL claim against the CDTA. Hoit challenges that ruling. We review it for abuse of discretion. *Spiegel v. Schulmann*, 604 F.3d 72, 78 (2d Cir. 2010). Because there is no primary violation of the NYSHRL for Mancini to have aided or abetted, as discussed above, we agree with the District Court that the proposed amendment would be futile.

[6] Nor was Mancini Clanton's supervisor.

act can properly be characterized as state action.").

### D.  State Law Tort Claims

That portion of the judgment dismissing the state law tort claims "in their entirety," Sp. App. 43, is vacated and the case is remanded to the District Court with instructions to reenter judgment dismissing the state law tort claims without prejudice so it is clear that plaintiff may, if he so chooses, replead his state law tort claims in state court.

IV.

We have considered all of Hoit's remaining arguments and have found in them no basis for reversal.  Accordingly, we **AFFIRM** in part the judgment of the District Court as to that portion dismissing Hoit's NYSHRL and § 1983 claims and denying Hoit's cross-motion for leave to file an amended complaint, and **VACATE** in part the judgment as to that portion dismissing Hoit's state law tort claims "in their entirety," Sp. App. 43, and **REMAND** with instructions to reenter judgment dismissing the state law tort claims without prejudice.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

14